1

2

3
FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4
Feb 02, 2023

SEAN F. McAVOY, CLERK

5
UNITED STATES DISTRICT COURT

6
EASTERN DISTRICT OF WASHINGTON

7
JACK W. J.,

8
                          Plaintiff,

NO:  1:22-CV-3046-RMP

9
        v.

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

10
COMMISSIONER OF SOCIAL
SECURITY,

11
                          Defendant.

12

13
        BEFORE THE COURT, without oral argument, are cross-motions for

14
summary judgment from Plaintiff Jack W.J.[1], ECF No. 11, and Defendant the

15
Commissioner of Social Security (the "Commissioner"), ECF No. 12.  Plaintiff

16
seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the

17
Commissioner's partial denial of his claim for Social Security Income ("SSI") and

18

19

20
[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first
name and last initial.

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

denial of his claim for Disability Insurance Benefits ("DIB") under Titles XVI and

Title II, respectively, of the Social Security Act (the "Act"). *See* ECF No. 11 at 1–2.

Having considered the parties' motions, the administrative record, and the

applicable law, the Court is fully informed. For the reasons set forth below, the

Court denies Plaintiff's Motion for Summary Judgment, ECF No. 11, and grants

summary judgment in favor of the Commissioner, *see* ECF No. 12.

## BACKGROUND

### General Context

Plaintiff applied for SSI and DIB on approximately January 19, 2017, alleging

onset on March 1, 2016. Administrative Record ("AR")[2] 17, 301–11. Plaintiff was

46 years old on the alleged disability onset date and asserted that he was unable to

work due to antisocial personality disorder, schizotypal personality, post-traumatic

stress disorder, depression, anxiety/panic disorder, degenerative disc disease and

back pain into hips, cervical spondylosis with ulnar neuropathy, right knee pain,

right foot injury and pain, and arthritis. AR 301–11, 325. Plaintiff reported that he

stopped working in November 2013. AR 325. Plaintiff's claims proceeded to a

hearing in July 2018, and the ALJ issued an unfavorable decision in October 2018.

AR 14–30, 56–86. The Appeals Council denied review, and Plaintiff sought review

---

[2] The Administrative Record is filed at ECF No. 8.

in the U.S. District Court for the Eastern District of Washington.  United States

District Court Judge Robert H. Whaley granted a Stipulated Motion for Remand on

October 22, 2019.  AR 1251–53.

On remand, Administrative Law Judge ("ALJ") Glenn Meyers held a hearing

telephonically from Seattle, Washington.  AR 1150–52.  Plaintiff was present with

counsel D. James Tree.  AR 1150–52.  Plaintiff and vocational expert Anne Jones

testified in response to questions from ALJ Meyers and counsel.  AR 1152–75.  ALJ

Meyers held a supplemental hearing, telephonically, on December 9, 2021.  AR

1179.  Plaintiff was represented at the supplemental hearing by D. Robert Tree, and

again testified in response to questions from ALJ Meyers and counsel.  AR 1177,

1186–97.  The ALJ and Plaintiff's counsel also questioned medical expert Dr. Omar

Hussamy and vocational expert Robert Simmons.  AR 1178–1204.  ALJ Meyers

issued a partially favorable decision on January 12, 2022, and the Appeals Council

declined review.  AR 1115–35; *see* ECF No. 11 at 3 (asserting that the ALJ's

decision became the final agency decision when the Appeals Council did not assume

jurisdiction of the case) (citing 20 C.F.R. §§ 404.984(a), 416.1484(a)).

/ / /

/ / /

/ / /

/ / /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

1

***ALJ's Decision***

2

As to the five-step sequential evaluation process, ALJ Meyers found:

3

**Step one:** Plaintiff meets the insured status requirements of the Act through

4

March 31, 2016.  AR 1118.  Plaintiff has not engaged in substantial gainful activity

5

since March 1, 2016, the alleged onset date.  AR 1118.

6

**Step two:** Plaintiff has the following severe impairments that are medically

7

determinable and significantly limit his ability to perform basic work activities: left

8

foot fracture with arthritis; status-post open reduction internal fixation ("ORIF")

9

surgery; status post-ORIF with plates in foot; lumbar degenerative disc disease;

10

cervical degenerative disc disease; status post-fusion of the cervical spine;

11

depressive disorder; and anxiety disorder, pursuant to 20 C.F.R. §§ 404.1520(c) and

12

416.920(c).  AR 1119.  In determining Plaintiff's severe impairments, ALJ Meyers

13

noted that the Plaintiff's "record also contains evidence pertaining to conditions that

14

do not constitute severe impairments."  AR 1119.  ALJ Meyers found that right

15

shoulder pain is nonsevere as it "resolved with treatment and did not result in any

16

significant persistent, functional limitations, rendering it nonsevere."  AR 1119.

17

ALJ Meyers further found that bilateral cubital tunnel syndrome, sleep apnea, and

18

substance use disorder were nonsevere because they did not result in functional

19

limitations for the requisite 12-month period.  AR 1119.  As to a diagnosis of

20

dissociative identity disorder, the ALJ did not give the mental health counselor's

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

1    assessment weight because: "[t]he diagnosis was based solely on the claimant's

2    subjectively reported symptoms and is not corroborated elsewhere in the record";

3    and "the counselor is not a medically acceptable source for the purpose of

4    establishing the existence of medically determinable impairments." AR 1119.

5    The ALJ affirmed that he considered all of Plaintiff's impairments, including those

6    that he found to be nonsevere, in assessing Plaintiff's residual functional capacity

7    ("RFC"). AR 1120.

8        **Step three:** The ALJ concluded that Plaintiff does not have an impairment, or

9    combination of impairments, that meets or medically equals the severity of one of

10    the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

11    404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). AR 1120.

12        In reaching this conclusion, the ALJ found that: Plaintiff's spine impairment

13    does not meet or medically equal Listings 1.15 or 1.16; Plaintiff's joint impairments

14    do not meet or medically equal Listing 1.18; and Plaintiff's mental impairments do

15    not meet or medically equal Listing 12.04. AR 1120.

16        With respect to Plaintiff's mental impairments, the ALJ addressed the

17    "paragraph B' criteria and found that Plaintiff's mental impairments, considered

18    singly and in combination, do not meet or medically equal the criteria of Listing

19    12.04 and 12.06 since Plaintiff's impairments do not result in one extreme limitation

20    or two marked limitations in a broad area of functioning. AR 1120. The ALJ found

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

that Plaintiff is moderately limited in: understanding, remember, or applying

information; interacting with others; concentrating, persisting, or maintaining pace;

and adapting or managing oneself.  AR 1120–21.  The ALJ cited to portions of the

record explaining his findings.  AR 1120–21.

The ALJ also memorialized his finding that Plaintiff's mental impairments fail

to satisfy the "Paragraph C" criteria.  AR 1121.

**Residual Functional Capacity ("RFC"):**  The ALJ found that, since March 1,

2016, Plaintiff has had the RFC to perform: sedentary work as defined in 20 §§ CFR

404.1567(a) and 416.967(a) except that he can lift and/or carry ten pounds

frequently and occasionally; requires a sit/stand at will option to be provided in the

workplace; can occasionally stoop; cannot crouch, crawl, kneel, or climb ramps,

stairs, ropes, ladders, or scaffolds; can frequently reach, handle, finger, and feel;

cannot perform overhead reaching; can frequently reach at or below shoulder level;

and cannot work at heights or in proximity to hazardous conditions.  Plaintiff can be

required to remember, understand, and carry out simple and routine instructions and

tasks consistent with the learning and training requirements of SVP level one and

two jobs.  He cannot have contact with the public.  However, he can work in

proximity to, but not in coordination with, coworkers, and he can have occasional

contact with supervisors.  AR 1122.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 1123.

**Step four:** The ALJ found that, since March 1, 2016, Plaintiff has been unable to perform any past relevant work.  AR 1133.

**Step five:** The ALJ found that Plaintiff has at least a high school education and was a younger individual (age 45-49), on the alleged disability onset date.  AR 1133.  The ALJ found that Plaintiff's age category changed to an individual closely approaching advanced age on October 11, 2019.  AR 1133 (citing 20 C.F.R. §§ 404.1563 and 416.963.  The ALJ found that "[p]rior to October 11, 2019, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled' whether or not [Plaintiff] has transferable job skills."  AR 1133.  However, the ALJ continued, "Beginning on October 11, 2019, [Plaintiff] has not been able to transfer job skills to other occupations."  AR 1133 (citing SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2)."  With respect to the period before Plaintiff's age category changed on October 11, 2019, the ALJ found that,

1    considering Plaintiff's age, education, work experience, and RFC, there were jobs

2    that existed in significant numbers in the national economy that Plaintiff could have

3    performed.  AR 1133 (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and

4    416.969a).  Specifically, the ALJ recounted that the vocational expert identified the

5    following representative occupations that Plaintiff would be able to perform with the

6    RFC: office helper (light, unskilled work, with around 75,000 jobs nationally);

7    routing clerk (light, unskilled work, with around 35,000 jobs nationally); and

8    collator operator (light, unskilled work with around 30,000 jobs nationally).  AR

9    1134.  The ALJ concluded that Plaintiff had not been disabled within the meaning of

10    the Act prior to October 11, 2019 or at any time through March 31, 2016, the date

11    last insured, but Plaintiff qualifies as disabled since his age category changed on

12    October 11, 2019.  AR 1134–35.

13    **LEGAL STANDARD**

14    ***Standard of Review***

15    Congress has provided a limited scope of judicial review of the

16    Commissioner's decision.  42 U.S.C. § 405(g).  A court may set aside the

17    Commissioner's denial of benefits only if the ALJ's determination was based on

18    legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

19    993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

20    determination that a claimant is not disabled will be upheld if the findings of fact are

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1  supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

2  1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere

3  scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

4  1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

5  1989).  Substantial evidence "means such evidence as a reasonable mind might

6  accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

7  401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

8  [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

9  *v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the

10  record, not just the evidence supporting the decisions of the Commissioner.

11  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

12        A decision supported by substantial evidence still will be set aside if the

13  proper legal standards were not applied in weighing the evidence and making a

14  decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

15  1988).  Thus, if there is substantial evidence to support the administrative findings,

16  or if there is conflicting evidence that will support a finding of either disability or

17  nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

18  812 F.2d 1226, 1229–30 (9th Cir. 1987).

19  / / /

20  / / /

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

*Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

*Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 416.920, 404.1520. Step one determines if he is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically

severe impairment or combination of impairments.  20 C.F.R. §§ 416.920(a)(4)(ii),

404.1520(a)(4)(ii).  If the claimant does not have a severe impairment or

combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which

compares the claimant's impairment with listed impairments acknowledged by the

Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §§

416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If

the impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.

If the impairment is not one that is conclusively presumed to be disabling, the

evaluation proceeds to the fourth step, which determines whether the impairment

prevents the claimant from performing work that he has performed in the past.  If the

claimant can perform his previous work, the claimant is not disabled.  20 C.F.R. §§

416.920(a)(4)(iv), 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment

is considered.

If the claimant cannot perform this work, the fifth and final step in the process

determines whether the claimant is able to perform other work in the national

economy considering his residual functional capacity and age, education, and past

work experience.  20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v.

Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1.   Did the ALJ erroneously assess Plaintiff's subjective symptom complaints?
2.   Did the ALJ erroneously evaluate five mental health source opinions in the record?

***Subjective Symptom Testimony***

Plaintiff argues that the ALJ did not offer specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony. ECF No. 11 at 18–19. Plaintiff argues that the ALJ could not base his adverse finding on the validity of Plaintiff's symptom testimony solely on a lack of support from objective findings. *Id.* at 19 (citing SSR 16-3p; *Light v. Comm'r*, 119 F.3d 789, 792 (9th Cir.

1  1997)).  Plaintiff maintains that the ALJ failed to provide specific evidence to refute

2  particular symptom testimony.  *Id.* at 20.  Plaintiff further argues that mere

3  improvement of his mental symptoms does not equate to nondisability.  *Id.* at 21

4  (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *Garrison*, 759

5  F.3d at 1018–19).  Lastly, Plaintiff argues that the ALJ's reasoning that Plaintiff

6  independently performs his daily activities fails "because the ALJ provides no

7  evidence that these minimal activities were performed in a manner that indicate

8  [Plaintiff] would be able to work consistently for eight hours a day, five days a

9  week."  *Id.* at 21.

10       The Commissioner responds that substantial evidence supports the ALJ's

11  determination that "the medical evidence and Plaintiff's activities did not support his

12  claims of debilitation."  ECF No. 12 at 3.  Specifically, the Commissioner argues

13  that the record contradicts Plaintiff's claims that he cannot handle the sitting,

14  standing, and walking requirements of even sedentary work.  *Id.* (citing AR 1122–25

15  for support that Plaintiff consistently displayed normal extremity strength, sensation,

16  and gait, as well as no focal neurologic deficits).  The Commissioner also maintains

17  that the ALJ cited to substantial evidence showing some persistent symptoms, but

18  "primarily show[ing] stability with treatment and reflect[ing] modest mental status

19  examination findings with largely intact memory and concentration, as well as

20  appropriate interpersonal interactions and behavior with providers."  *Id.* at 4–5

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1   (citing AR 1125–27).  The Commissioner maintains, "This history reasonably cast

2   doubt over debilitating claims."  *Id*. at 5.  The Commissioner further cites the Court

3   to treatment records indicating that Plaintiff's mental health symptoms improved

4   with treatment, worsened when he skipped doses of his prescribed medication, and

5   resolved again when he resumed "regular dosing."  *Id.* (citing AR 845–46, 1613–

6   14).

7          In deciding whether to accept a claimant's subjective symptom testimony, an

8   ALJ must perform a two-step analysis.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th

9   Cir. 1996).  First, the ALJ must evaluate "whether the claimant has presented

10   objective medical evidence of an underlying impairment 'which could reasonably be

11   expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*,

12   504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

13   (9th Cir. 1991)).  Second, if the first test is met and there is no evidence of

14   malingering, "the ALJ can reject the claimant's testimony about the severity of her

15   symptoms only by offering specific, clear and convincing reasons for doing so."

16   *Smolen*, 80 F.3d at 1281.

17          The ALJ must make findings that are sufficiently specific to permit the

18   reviewing court to conclude that he did not arbitrarily discredit the claimant's

19   testimony.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti v.*

20   *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  In determining how much to credit a

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

claimant's testimony, the ALJ may consider the objective medical evidence, the

claimant's treatment history, the claimant's daily activities, inconsistencies in

testimony, effectiveness or adverse side effects of any pain medication, and relevant

character evidence. *See Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

The ALJ reasoned that Plaintiff's activities, as evidenced throughout the

record, are "not inconsistent with the [RFC] and . . . do not support debilitating

limitations." AR 1128. As noted in the record, Plaintiff reported that, with the

exception of shopping, he independently performed his activities of daily living

during the relevant period between 2016 and 2019. AR 1903. For instance, he

prepared his own meals, did housework and laundry, cared for his hygiene, managed

his prescriptions, scheduled his own appointments, and rode motorcycles for

enjoyment. AR 1903. He reported to a provider in 2019 that he had gone on a

"long" hike. AR 2360. Plaintiff testified that, even though his conditions had

worsened by the time of the December 2021 hearing, he continued to socialize with

friends, one-on-one and in different settings, including outside of his home. AR

1192–93. He plays video games, browses the internet, and chats on a computer. AR

1167. The Court agrees with the Commissioner that these activities tend to show

physical and mental abilities greater than the totally debilitating impairment to

which Plaintiff testified. AR 1170 (Plaintiff testifying that on bad days he "sit[s] in

[his] chair"); *see* ECF No. 12 at 6.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

In addition, the ALJ reasoned that "the record documents persistent symptoms but shows stability with treatment and reflects modest mental status examination findings with largely intact memory and concentration, as well as appropriate interpersonal interactions and behavior with providers."  AR 1128.  Plaintiff claimed at the hearings in 2021 that he was "never" able to complete a video game because he got frustrated and would struggle with his concentration while playing dice.  AR 1159, 1192.  However, Plaintiff performed tasks requiring concentration "within normal limits" on mental status examinations and "had no difficulty" following the conversation with the examiner.  AR 556, 1907.

Plaintiff also testified that he has an anxiety attack "every time" he leaves the house or thinks about leaving the house.  AR 1170.  This assertion contrasts with the multiple records indicating unremarkable mental status evaluation findings and reports to providers of decreased anxiety and relief from other relevant mental health symptoms.  *See* AR 1127.

The ALJ's thorough review of the medical evidence in comparison to Plaintiff's statements amounts to specific, clear, and convincing reasons for not fully crediting Plaintiff's complaints.  Substantial evidence supports the ALJ's conclusion that the record does not corroborate the severity of the symptoms that Plaintiff alleges with respect to the relevant period.

The Court finds no error based on the ALJ's treatment of Plaintiff's subjective symptom testimony and, therefore, denies summary judgment to Plaintiff, and grants summary judgment to Defendant, on this ground.

***Medical Opinions***

Plaintiff alleges that the ALJ erred in his treatment of five medical opinions: medical expert Omar Hussamy, M.D.; examining psychologist R. Cline, Psy.D.; examining physician M. Liddell, M.D.; treating therapist M. Neil Anderson, LICSW; and evaluating psychologist Thomas Genthe, Ph.D.  ECF No. 11 at 7–18. The Commissioner responds that the ALJ's evaluation of the medical opinions was reasonable and supported by substantial evidence.  ECF No. 12 at 7–11.

Plaintiff applied for SSI and DIB on approximately January 19, 2017, alleging onset on March 1, 2016.  AR 17, 301–11.  Revisions to rules guiding the evaluation of medical evidence that took effect on March 27, 2017, do not apply to claims filed before March 27, 2017, and the "treating physician rule" under the previous regulations instead applies.  *See* 20 C.F.R. § 416.927.

Under the treating physician rule, "the weight afforded to a medical opinion depends upon the source of that opinion. A treating physician's opinion, for example, is entitled to greater weight than the opinions of nontreating physicians." *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).  An ALJ must consider the acceptable medical source opinions of record and assign weight to each.  20 C.F.R.

§§ 404.1527(c), 416.927(c).  This responsibility often involves resolving conflicts

and ambiguities in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998).  To reject the contradicted opinion of a treating or examining

physician, the ALJ must provide specific and legitimate reasons for doing so.

*Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).  "An ALJ can satisfy the

substantial evidence requirement by setting out a detailed and thorough summary

of the facts and conflicting clinical evidence, stating his interpretation thereof, and

making findings."  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing

*Reddick*, 157 F.3d at 725).

An ALJ may discount an otherwise valid medical source opinion as overly

conclusory, poorly supported by or inconsistent with the objective medical record,

or inordinately reliant on a claimant's self-reported symptoms, provided the ALJ

provides clear and convincing reasons to discredit the symptom allegations.  *See,*

*e.g., Coleman v. Saul*, 979 F.3d 751, 757–58 (9th Cir. 2020).

The Court finds no error based on the ALJ's treatment of Plaintiff's subjective

symptom testimony and, therefore, denies summary judgment to Plaintiff, and grants

summary judgment to Defendant, on this ground.

### **Dr. Hussamy**

Plaintiff argues that the ALJ improperly rejected Dr. Hussamy's opinion

regarding Plaintiff's physical limitations.  ECF Nos. 11 at 5; 13 at 2–3.  Plaintiff

asserts that Dr. Hussamy's opinion of disabling limitations was based "on his review of exhibits B-1F and B-57F of the record, and that these medical records contained sufficient information to allow him to form an opinion." ECF No. 11 at 8 (citing AR 1181–82). Plaintiff maintains that the ALJ should have inquired about the basis for Dr. Hussamy's opinion regarding Plaintiff's standing and walking restrictions before using a lack of support for those limitations as a reason to reject Dr. Hussamy's opinion. *Id.* at 8–9.

The Commissioner responds that the ALJ "was well within reason for having hesitation in accepting Dr. Hussamy's opinion regarding Plaintiff's significant standing, walking, and sitting limitations without any specific support." ECF No. 12 at 8–9. Furthermore, the Commissioner asserts, the ALJ cited to records that consistently document normal lower extremity strength, sensation, and gait, and no focal neurologic deficits that would support extreme limitations in sitting, standing, or walking. *Id.* at 9 (citing AR 1122–25).

Dr. Hussamy completed interrogatories in January 2021. AR 2443–46.[3] Dr. Hussamy opined that Plaintiff did not meet or equal any listing. AR 2444–45. Dr. Hussamy did not list any impairments that he identified from his review of the

---

[3] The Commissioner refers to opinions by Dr. Hussamy elicited at "a previous hearing in March 2016[." ECF No. 12 at 8. However, the Court agrees with Plaintiff that the only hearing testimony from Dr. Hussamy in the record is from December 9, 2021. *See* ECF No. 13 at 2; AR 1181–86.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

medical record.  *See* AR 2443–46.  However, in response to a prompt to identify

"any functional limitations or restrictions" resulting from any impairments that Dr.

Hussamy identified from Plaintiff's medical record, Dr. Hussamy opined that

Plaintiff could frequently lift and carry up to ten pounds frequently and twenty

pounds occasionally and could climb, balance, stoop, kneel, crouch, and crawl.

AR 2446.

At the December 9, 2021 hearing, Dr. Hussamy acknowledged that he had

"mistake[nly]" omitted any impairments and added that he found "fractures of

lower limb, DDD disorders of back, depressive bipolar and related disorders,

anxiety, and obsessive-compulsive disorders, and substance addiction disorders"

supported by the medical record.  AR 1182.  The ALJ asked Dr. Hussamy for his

opinions as to Plaintiff's capacity to stand and walk in an eight-hour day, and Dr.

Hussamy opined that Plaintiff could "[s]it for four hours, stand for two hours, and

walk for two hours, and he would need a five-minute break every hour for each of

those periods."  AR 1183.  Dr. Hussamy added that the break would need to

include a postural change, but that Plaintiff does not use or require any assistive

device.  AR 1183–84.  In response to questioning from Plaintiff's counsel, Dr.

Hussamy opined that Plaintiff would miss two to three days each month from a

full-time work schedule.  AR 1185.  When pressed by the ALJ to clarify the cause

of Plaintiff's likely absences, Dr. Hussamy responded that he could reasonably

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

predict that Plaintiff would have a flareup of his chronic pain and lower back degenerative disc condition "two to three times" per month, on average.  AR 1185–86.

The ALJ gave Dr. Hussamy's opinion regarding Plaintiff's physical limitations "some, but not great weight."  AR 1129.  The ALJ found Dr. Hussamy's opinion to be persuasive "to the extent that he reviewed the entire record in formulating his opinion."  AR 1129.  However, the ALJ further found that Dr. Hussamy did not offer specific support for the significant standing and walking limitations that he assessed.  AR 1129.  The ALJ reasoned, as follows:

> For example, the doctor failed to provide specific support for the significant standing and walking limitations he assessed, and as discussed above, the record consistently documents intact lower extremity strength and sensation, as well as normal gait.  In addition, the record repeatedly notes no focal neurologic deficits that would support the limitations he assessed regarding sitting, standing, or walking. The record as a whole documents general stability of the claimant's physical impairments and improvement with medications and injections, with modest examination findings that are not consistent with the extent of the limitations assessed by Dr. Hussamy. Furthermore, the record does support some environmental limitations given the claimant's impairments and mediation side effects. The undersigned also notes that there is no support in the record for the opinion that the claimant would likely miss two to three days of work per month due to his impairments, as the longitudinal record documents general stability of the claimant's conditions and consistently modest examination findings. Moreover, the claimant's activities, including independently performing household chores, riding his motorcycle, and hiking are not consistent with the extent of the limitations alleged. Finally, the undersigned notes that in the interrogatories Dr. Hussamy completed, he did not opine that the claimant would have absences from work, and he did not provide a date upon which the alleged work

1

2

absences began; this may have been after the established onset date, as the claimant testified to a worsening of his condition. For these reasons, Dr. Hussamy's opinion is not given great weight.

3    AR 1129 (citing AR 2442–46).

4        Plaintiff contends that the ALJ was obligated to develop the record further

5    before he found Dr. Hussamy's opinion less persuasive for "fail[ing] to provide

6    support for the significant standing and walking limitations." ECF No. 11 at 8

7    (citing AR 1129). An ALJ must assess a claimant's RFC "based on all of the

8    relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

9    The claimant "is ultimately responsible for providing the evidence to be used in

10   making the RFC finding," but an ALJ has "a special duty to fully and fairly

11   develop the record and to assure that the claimant's interests are considered."

12   *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citations omitted). "An

13   ALJ's duty to develop the record further is triggered only when there is ambiguous

14   evidence or when the record is inadequate to allow for proper evaluation of the

15   evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). The Court

16   defers to the ALJ's RFC determination "if the ALJ applied the proper legal

17   standard and his decision is supported by substantial evidence." *Bayliss v.

18   Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

19       The interrogatories that the ALJ sent to Dr. Hussamy asked for Dr.

20   Hussamy's opinion for the period of "February 5, 2016 through October 11, 2019.

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

Alleged Onset Date: March 1, 2016[.]" AR 2444. The ninth interrogatory asked Dr. Hussamy to "identify *any* functional limitations or restrictions that result from the impairment(s)" that Dr. Hussamy had identified based on his review of Plaintiff's medical record, including "such things as the ability to sit, stand, walk, lift, carry, push, and pull." AR 2446 (emphasis added). Dr. Hussamy did not identify any sitting, standing, or walking limitations in the interrogatories, but did identify such a limitation during his hearing testimony, thought he was reviewing the same medical record in formulating both sets of limitations. At the hearing, Dr. Hussamy did not identify any particular records that supported either those sitting, standing, and walking limitations, or his opinion that Plaintiff would miss two to three days of work per month. *See* AR 1183–86.

Plaintiff has not shown that the record was inadequate for the ALJ to evaluate the evidence, and, therefore, the Court does not find any deficiency in the ALJ's duty to further develop the opinion evidence before reaching a decision. *See Mayes*, 276 F.3d at 460. Furthermore, the Court finds that the ALJ offered sufficient reasons, supported by substantial evidence, in evaluating Dr. Hussamy's opinion.

### Drs. Cline and Liddell, and Mr. Anderson, LICSW

Plaintiff argues that the ALJ erred by failing to fully credit the opinions of psychological examiners Drs. Cline and Liddell, and treating therapist Mr.

Anderson.  ECF Nos. 11 at 14–17.  Plaintiff maintains that the fact that all three

mental health professionals found that Plaintiff would have issues performing work

activities over a normal workday/work week favors giving the opinions greater

weight and that the ALJ's determination that none of these opinions warranted

weight was contrary to the Social Security regulations.  ECF No. 13 at 3–4 (citing

20 C.F.R. § 404.1527(c)(4)).  Plaintiff also alleges error by the ALJ in discounting

the opinions for being "based" on Plaintiff's subjective reports when the medical

sources also discussed their own observations or diagnoses, in addition to the self-

reports.  ECF No. 12 at 12, 15.  Plaintiff cites to portions of Plaintiff's treatment

records that Plaintiff maintains are consistent with Plaintiff's self-reports to

examining psychologist Dr. Cline and his presentation at that examination.  *Id.* at

12 (citing AR 702, 740, 753 for appointments where Plaintiff presented as angry;

AR 438, 454, 483, 518, 561, 610, 702, 739, 743, and 781, where Plaintiff presented

as irritable; AR 485, 753, where Plaintiff presented as upset, and AR 343, 751,

where Plaintiff presented as agitated).  Plaintiff adds that Dr. Cline's rule-out

diagnosis of malingering was not a diagnosis and merely a finding that "'there is

evidence that the criteria for a diagnosis *may* be met, but more information is

needed in order to rule it out.'"  ECF No. 11 at 13–14 (quoting *Carrasco v. Astrue*,

2011 WL 499346, at *4 (C.D. Cal. Feb. 8, 2011) (unpublished).  Plaintiff also

argues that the ALJ wrongly discounted Mr. Anderson's opinion on the basis that it

1  was in check-box form, without a narrative explanation, as the type of form alone

2  is not a valid reason to reject an opinion.  *Id.* at 16–17.

3  The Commissioner responds that the ALJ provided valid bases, and cited to

4  substantial evidence, to discount the mental health providers' opinions when he:

5  (1) found that their opinions were inconsistent with the providers' own

6  examination or treatment notes; (2) noted that none of the providers' opinions were

7  well explained; (3) found that the mental status examinations found only modest

8  limitations regarding Plaintiff's cognitive abilities and social interactions; and (4)

9  found that the providers' opinions were inconsistent with the overall record) ECF

10  No. 12 at 10–11 (citing *Tommasetti*, 533 F.3d at 1041; 20 C.F.R. §§

11  404.1527(c)(4), 416.927(c)(4)).

12  Dr. Cline evaluated Plaintiff for the Washington State Department of Social

13  and Health Services ("DSHS") on February 28, 2017.  AR 802–06.  Dr. Cline

14  found Plaintiff to have a marked limitation in understanding, remembering in

15  persisting in tasks by following detailed instructions and a severe limitation in:

16  communicating and performing effectively in a work setting; maintaining

17  appropriate behavior in a work setting; and completing a normal work day and

18  work week without interruptions from psychologically-based symptoms.  AR 804–

19  05.  Dr. Cline found Plaintiff to have a mild or no limitation or a moderate

20

21

1    limitation in all other basic work activities. AR 804–05. Dr. Cline rated Plaintiff

2    markedly limited overall. AR 805.

3    Dr. Liddell completed an evaluative examination of Plaintiff on May 6,

4    2017. AR 557–62. Dr. Liddell also noted that Plaintiff's presentation at the

5    examination was "slightly odd and dramatic" and that "[a]dditional collateral

6    information would be useful in order to obtain a clearer picture as [Dr. Liddell]

7    worr[ies] about the reliability of [Plaintiff's] report." AR 562. By way of a

8    functional assessment, Dr. Liddell concluded that Plaintiff's "psychiatric

9    symptoms including irritability and poor distress tolerance would continue to cause

10   limitations in his ability to accept instructions from supervisors, perform work

11   activities on a consistent basis, maintain regular attendance in the workplace,

12   complete a normal workday or workweek without interruptions, and manage usual

13   stress encountered in the workplace." AR 562.

14   Mr. Anderson completed a medical source statement on December 11, 2017,

15   and again on January 2, 2020, on September 2, 2020, and on December 28, 2020.

16   AR 675–78, 1525–29, 1530–34, and 2427–32. Mr. Anderson also completed a

17   letter on February 16, 2021. AR 2452. On the medical source statements, Mr.

18   Anderson made summary conclusions regarding Plaintiff's limitations in twenty

19   activity categories related to an average workday and workweek. Mr. Anderson

20   indicated that Plaintiff is markedly or severely limited in half of those categories.

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26

AR 675–67.  Mr. Anderson further opined that Plaintiff satisfies the "B" and "C" criteria of the mental listings and that Plaintiff would likely be off task over thirty percent of the time and miss four or more days per month if he were to attempt to work a 40-hour per week work schedule.  AR 677.  In the February 2021 letter, Mr. Anderson wrote that Plaintiff's symptoms related to his mental health diagnoses "are well-controlled through a combination of medication and therapy." He continued, "[Plaintiff] has consistently exhibited a high level of responsibility for his condition, complies with treatment recommendations, and does not currently pose a threat to himself or others."  AR 2452.

The ALJ found that Dr. Cline's and Mr. Anderson's opinions should not be given weight and that Dr. Liddell's opinion should not be given "great weight overall."  AR 1130–32.  The ALJ reasoned that none of the three mental health sources sufficiently explained his or her opinions or provided objective support for his or her conclusions.  AR 1130–32.  The ALJ further reasoned that the examiners' and treatment provider's opinions were inconsistent with Plaintiff's treatment records and modest mental status examination findings.  AR 1130–32.

First, the ALJ identified mental examination findings generally within normal limits by all three mental health sources.  Dr. Liddell recorded that Plaintiff had "good eye contact, was cooperative though irritable, was dramatic in his description of his history of aggression (almost in a comical manner)," but Plaintiff nonetheless

1   had "good adherence to social conventions . . . appropriate posture," and "coherent,

2   logical, and linear" thought process.  AR 560.  Apart from poor insight into his

3   overall mental health, Plaintiff's intellectual functioning also was unremarkable

4   when examined by Dr. Liddell, with the ability to recall and "give a clear and

5   sequential history narrative" and "good persistence in attempting tasks . . . ."  AR

6   561.  Dr. Cline's examination found Mr. Anderson's concentration to be within

7   normal limits, and Plaintiff's performance with respect to memory was inconsistent

8   in a manner that indicated to Dr. Cline that malingering could not be ruled out.  AR

9   806.

10       Second, substantial evidence supports the ALJ's finding that the mental health

11   source's opinions were incongruous with the longitudinal record and based heavily

12   on Plaintiff's self-reported symptoms.  *See* AR 1126–32.  ALJ Meyers cited to

13   records, many of which were created by Mr. Anderson, that indicate that Plaintiff

14   presented at appointments in a stable mood and able to engage in "appropriate

15   interpersonal interactions and behavior with providers."  AR 1126–29 (citing, e.g.,

16   AR 845–46, 851, 860–62, 865, 870, 875, 885, 1592–93, 1610–11).  The records

17   cited span the relevant period.  *See id.*  ALJ Meyers also correctly noted that the

18   primary source of information for Dr. Liddell was Plaintiff himself.  *See* AR 557–60

19   (indicating that the sections summarizing Plaintiff's medical, psychiatric, social, and

20   substance use history, and Plaintiff's functional abilities were wholly based on

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 28

1    Plaintiff's reports).  Dr. Cline also wrote that she reviewed only one previous

2    assessment of Plaintiff, from 2014, and otherwise relied on Plaintiff's self-report.

3    AR 802.  The Court has already found that the ALJ offered adequate reasons for

4    discounting Plaintiff's subjective symptom testimony.  Moreover, the examiners

5    themselves expressed doubt regarding whether they could rely on Plaintiff's self-

6    report, with Dr. Cline concluding that she could not rule out malingering and Dr.

7    Liddell wrote: "Additional collateral information would be useful in order to obtain

8    a clearer picture as I worry about the reliability of [Plaintiff's] report."  AR 815.

9    Accordingly, the Court also finds no error in discounting the mental health source

10    opinions for relying primarily on Plaintiff's subjective complaints.

11        Lastly, ALJ Meyers also reasoned that the mental health sources' opinions are

12    not entitled to weight because they lack any narrative explanation.  *See* AR 1130–32.

13    Courts have found no error when ALJs have discounted an opinion that does not

14    explain its conclusions.  *Molina*, 674 F.3d at 1111–12 (ALJ properly rejected

15    physician assistant's opinion where it consisted of a check-the-box form and failed to

16    provide supporting reasoning); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)

17    (ALJ permissibly rejected psychological evaluations "because they were check-off

18    reports that did not contain any explanation of the bases of their conclusions"); *De*

19    *Guzman v. Astrue*, 343 F. App'x 201, 209 (9th Cir. 2009) (ALJ was "free to reject"

20    doctor's check-off report that did not explain basis for conclusions).

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 29

Thus, cumulatively, the ALJ has provided clear and convincing reasons, let alone specific and legitimate reasons, for discounting Dr. Cline's, Dr. Liddell's, and Mr. Anderson's opinions. *See Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012) (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Valentine v. Comm'r*, 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (contradiction between physicians opinion and treatment notes a clear and convincing reason to discount treating physician); *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are unsupported by objective medical findings or the record as a whole).

### Dr. Genthe

Plaintiff argues that the ALJ did not provide valid reasons for rejecting Dr. Genthe's disabling opinion. ECF No. 11 at 17–18. Plaintiff asserts that "the main problem that [Plaintiff] noted in 2019 was 'panic attacks because of PTSD.'" *Id.* at 18 (citing AR 1902). Plaintiff faults the ALJ for his finding that Dr. Genthe's opinion was "'not consistent' with the 'unremarkable mental status findings he noted,' including normal memory and concentration" because "[t]he fact that these symptoms were not evident during a single, short evaluation is not inconsistent with

1   the intermittent nature of these symptoms." *Id.* (quoting AR 1131).  Plaintiff also

2   argues that the ALJ erred in concluding that Dr. Genthe "'relied heavily' on

3   Plaintiff's subjective reports which were unreliable because [Plaintiff] was able to

4   interact appropriately with providers, friends, and family." *Id.* (citing AR 1131).

5          The Commissioner did not respond to Plaintiff's arguments regarding Dr.

6   Genthe specifically, but, as discussed above, did address the ALJ's reasoning

7   regarding mental health source opinions in Plaintiff's record being inconsistent with

8   "modest mental status examination findings with largely intact memory and

9   concentration, as well as appropriate interpersonal interactions and behavior with

10  providers." *See* ECF No. 12 at 5 (citing AR 1125–27).

11         Dr. Genthe evaluated Plaintiff on February 14, 2019, for DSHS.  AR 1902–

12  07.  Dr. Genthe opined that Plaintiff has a marked limitation in asking simple

13  questions and requesting assistance and a severe limitation in: communicating and

14  performing effectively in a work setting; maintaining appropriate behavior in a work

15  setting; and completing a normal work day and work week without interruptions

16  from psychologically based symptoms.  AR 1904–05.  Dr. Genthe found Plaintiff to

17  have no or a mild limitation or a moderate limitation in all remaining basic work

18  activities.  AR 1904–05.  Dr. Genthe found Plaintiff to be severely limited overall.

19  AR 1905.

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 31

1 　　　　The ALJ gave Dr. Genthe's opinion "little weight." AR 1131. ALJ Meyers

2 reasoned, similar to the reasoning he offered for the opinions discussed above: "Dr.

3 Genthe did not provide any explanation or support for the limitations he assessed,

4 and they are not consistent with the largely unremarkable mental status examination

5 findings he noted, including memory and concentration within normal limits, and

6 that the claimant was 'generally open, cooperative, and friendly.'" AR 1131 (citing

7 AR 1906)). ALJ Meyers continued, "Given the lack of support and inconsistency

8 with the findings Dr. Genthe noted, it is likely that he relied heavily on the

9 claimant's reported symptoms, which are not entirely corroborated by the record as a

10 whole, which establishes some limitations in social interaction, but shows that the

11 claimant consistently engaged appropriately with treating and examining providers,

12 and also spent time with friends and family." AR 1131.

13 　　　　The Court finds that the ALJ provided clear and convincing reasons, let alone

14 specific and legitimate reasons, for discounting Dr. Genthe's opinion on the same

15 bases that the Court discussed above. As with the above-discussed mental health

16 sources, Dr. Genthe's examination of Plaintiff noted thought process and content,

17 orientation, perception, memory, concentration, and abstract thought within normal

18 limits. AR 1906–07 (finding only Plaintiff's insight and judgment to be outside of

19 normal limits). Dr. Genthe indicated that "[n]o records were provided [to him] for

20 review." AR 1902. Therefore, the ALJ relied on substantial evidence in the record

21

in finding that Dr. Genthe exceedingly relied Plaintiff's appropriately discounted subjective complaints and that Dr. Genthe did not explain or rely on the unremarkable mental status examination findings or objective evidence in Plaintiff's longitudinal record to reach his conclusions.

Having found no error based on the treatment of medical source opinions, the Court denies Plaintiff's Motion for Summary Judgment on this last remaining issue and grants summary judgment to the Commissioner.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

4. Judgment shall be entered for Defendant.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** February 2, 2023.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
Senior United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 33